UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAIR WALLACE,<br><br>            Appellant,<br><br>     v.<br><br>WRIGHT GRANDCHILDREN, LP;<br>MICHAEL WRIGHT,<br><br>            Appellees. | No. 2:14-CV-00576-GEB<br><br>Adv. Proc. 08-02364-B<br><br>Bankruptcy No. 08-29045-B-7<br><br>BAP No. EC-14-1060<br><br>**APPEAL FROM BANKRUPTCY COURT** |

Appellant Wallace ("Wallace"), as Plaintiff Spiegel's ("Spiegel") successor in interest, appeals the Bankruptcy Court's order that granted Appellees Wright Grandchildren L.P.'s ("WG") and Michael Wright's ("Wright") declaratory relief and judicial foreclosure claims, and denied Plaintiff Spiegel's counterclaim for breach of contract. For the reasons set forth below, the Bankruptcy Court's decision is AFFIRMED.

**I.   STANDARD OF REVIEW**

A district court reviews a Bankruptcy Court's "[f]indings of fact . . . under the clearly erroneous standard of review and legal conclusions are reviewed de novo." In re

1

Mortgage Store, Inc., ___F.3d___, 2014 WL 6844630, at *2 (9th Cir. Dec. 5, 2014).

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.

Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

## II. FACTUAL BACKGROUND AND PROCDURAL HISTORY

Wallace's predecessor in interest and wife, Spiegel, owned two proprieties in Placer County, California: an 80-acre waterski lake and fish farm (the "Improved Parcel") and an 80-acre unimproved parcel (the "Unimproved Parcel") adjacent to the Improved Parcel. On June 1, 2006, Spiegel used the Parcels as security for a $1.7 million loan from Wright, who was acting as WG's managing partner. The agreement included the following release clause in the event that Spiegel sold the Improved Parcel:

> Beneficiary agrees to release . . . [the Improved Parcel] provided that the loan to value ratio of . . . [the Unimproved Parcel] does not exceed 50% of the existing loan balance. . . . If [the Improved Parcel] . . . sells, the maximum dollar amount the Borrower has to pay is $150,000, but in no event more than is required to reduce the loan to value ratio to less than 50% on [the Unimproved Parcel]. (SRE 10.)

In January 2008, Spiegel defaulted on the Note. At approximately the same time, she entered talks with a third party

about selling a portion of the Improved Parcel. Spiegel communicated with Wright about the potential sale in February and March 2008 through both her attorney and Wallace. In March 2008, Spiegel's counsel, Wallace, and Wright had an in-person meeting about the Improved Parcel. The parties dispute whether during this meeting Wright was offered $150,000 in exchange for releasing the Improved Property.

On April 2, 2008, Spiegel executed a final sales agreement with a third party selling a one-half interest in the Improved Property for $1.5 million. Spiegel's attorney notified Wright's attorney of the sale on April 8. Wright and WG then made a demand for the full amount owned on the loan, in light of Spiegel's default, and filed a Complaint in state court seeking judicial foreclosure and declaratory relief. Spiegel filed a cross complaint for breach of contract in which Spiegel alleged Wright and WG failed to perform under the release clause of the agreement. Spiegel eventually filed for bankruptcy, following which the case was removed to Bankruptcy Court. The parties consented to the Bankruptcy Court's jurisdiction.

A trial was conducted in May 2010. The disputed trial issue was the interpretation of the release clause. Wright and WG argued the release clause did not require the release of the Improved Property unless Spiegel agreed to maintain the loan to value ratio on the Unimproved Property. Spiegel argued she was not required to maintain the loan to value ratio on the Unimproved Property so long as she tendered $150,000 to Wright. The Bankruptcy Court ruled in favor of Wright and WG. Wallace then purchased Spiegel's appeal rights from her bankruptcy estate

on November 23, 2010.

Wallace appealed, and the Bankruptcy Court's ruling was reversed by the Ninth Circuit. The Ninth Circuit held that the terms of the release clause were unambiguous and Spiegel had the right to release the Improved Parcel in the event of a sale of that property by offering to pay the maximum fixed payment of $150,000 with no requirement to "maintain" the loan to value ratio on the Unimproved Property.

On remand, the Bankruptcy Court conducted a second trial, during which it granted Wright and WG's request for judicial foreclosure and declaratory relief, and denied Spiegel's cross-complaint for breach of contract, finding that no tender had ever been made.

The court entered its findings of fact orally, stating in part:

> I don't think there was any proof, per se, that [Wallace] had enough money at any given time to tender $150,000.
>
> . . . .
>
> I don't think there was the money available at any time to perform, and a tender does require, as I understand it, a present ability to perform. A tender is ineffective if the party making the offer is actually unwilling or unable to perform at the time of the tender. Thus, when the offer is to pay money, it must appear that the offeror has the money to pay, and the tender is ineffective if the offeror doesn't have the present ability to perform the tender if it is accepted. Well, I didn't have any proof that the money was available, and as I said, I had some doubt about what Mr. Wallace was testifying to.

(RT-2, Vol. 2, pg. 120, 124.)

4

### III. DISCUSSION

**A.   Ability to Perform**

Wallace argues that from February 12, 2008, through March 24, 2008, Spiegel made four valid offers to tender $150,000 to Wright in exchange for a release of the deed of trust on the Improved Parcel. He argues the Bankruptcy Court clearly erred when it found Spiegel's tenders were not valid because she did not have access to $150,000 when the offers were made, and contends the court's findings are contradicted by Wallace's testimony that he had access to the money as a result of "a substantial consulting contract." (Appellant's Opening Br. ("Mot.") 21, 23, ECF No. 4.) Wallace argues the Bankruptcy Court should not have discredited his trial testimony because it was supported by his prior deposition testimony and by bankruptcy documents created prior to trial. (Mot. 23.)

Wright counters that the Bankruptcy Court acted within its discretion when it discredited Wallace's testimony because although critical to Spiegel's case, the testimony was not presented at the first trial, and other evidence suggested Wallace and Spiegel did not have access to $150,000 at the time of the alleged tenders. (Opening Br. Of Appellees ("Opp'n") 21, ECF No. 7.)

Cal. Civ. Code § 1495 prescribes: "An offer of performance is of no effect if the person making it is not able and willing to perform according to the offer." "To satisfy section 1495 [of the California Civil Code, a person] . . . must . . . be[] able to tender payment." In re Worcester, 811 F.2d 1224, 1230 (9th Cir. 1987). Ability to tender payment can be

demonstrated by showing access to either assets or credit in the required amount. Backus v. Sessions, 17 Cal. 2d 380, 380-90 (1941) (finding plaintiff was able to perform because he presented evidence that he "could have borrowed" the required amount).

In the second trial, Wallace testified that he offered to pay Wright $150,000 during the March 2008 meeting and that he had access to the money "probably . . . since the first of February, maybe sooner." (RT-2, Vol. 1 p. 124.) Wright gave conflicting testimony during the second trial testifying that Wallace did not offer to pay him $150,000 at the March 2008 meeting.

The oral findings of fact during the second trial included the court's acknowledgment of a conflict between Wallace's testimony and Wright's testimony, and the conclusion that Wright's testimony was more credible. Specifically, the Bankruptcy Court stated:

> It's two people, conflict in the evidence, I have to decide who is telling the truth .... I heard the testimony of both parties. As so often happens, I tend to believe most of the witnesses, but in this situation I believe Mr. Wright. . . . Because I had to make a previous choice about who was telling the truth, unfortunately Mr. Wallace's credibility was put into doubt, and I don't think there was any proof, per se, that he had enough money at any given time to tender $150,000.

(RT-2, Vol. 2 p. 120.)

The Bankruptcy Court explained Wallace's credibility had been "put into doubt" because the information about which he testified during the second trial was "crucial" to Spiegel's

6

1  claim, yet this information was not presented at the first trial.
2  During the first trial, Wallace did not mention he had access to
3  $150,000 at the time of the March 2008 meeting or that he offered
4  to write Wright a check for $150,000 in the March 2008 meeting.
5  The court stated it "did not understand why" this information had
6  been presented for the first time at such a late stage of the
7  proceedings. (RT-2 Vol. 2, p. 119-20.)

8    The Bankruptcy Court's credibility determination was
9  consistent with other evidence submitted at trial. Although
10 Wallace testified that he had access to the money "probably . . .
11 since the first of February, maybe sooner," (RT-2 Vol. 1, pg.
12 124), a letter Spiegel's counsel sent to Wright dated February
13 27, 2008, states: "My client by way of this letter is tendering
14 to your client $150,000, which <u>would be available within two or</u>
15 <u>four weeks</u> from the date of this letter." (Appellant's R.
16 Excerpts ("SRE") 15) (emphasis added). This letter suggests the
17 money was not available in February as Wallace testified during
18 the second trial.

19   Further, the deposition testimony and documents Wallace
20 cites as support for his trial testimony do not demonstrate that
21 the Bankruptcy Court clearly erred when finding Wallace lacked
22 access to $150,000 in February and March 2008, since this
23 evidence does not show the funds were available in those months.
24 During Wallace's deposition, counsel asked him in which months he
25 received payment from the consulting contract and Wallace
26 responded: "I don't know" and "I don't want to speculate." (SRE
27 23.) A bankruptcy document on which Wallace relies indicates he
28 received payment on a construction consulting contract, but it

7

does not indicate that the payment was made in or before March 2008. (SRE 24.)

In light of the evidence in the record, the Bankruptcy Court's determination that Spiegel did not have access to the $150,000 required to make a valid tender has not been shown to be clearly erroneous.

### B. Waiver

Wallace argues Wright and WG waived objection to Spiegel's tender on the ground that she did not have access to $150,000 at the time of the alleged tender because Wright did not raise this objection when Spiegel tendered the money; and when "a party does not object to the form of the tender or the ability to pay at the time of the offer but instead simply refuses to consider the offer, the party waives its ability to raise such objections at a later date." (Mot. 13.) Wallace cites Rose v. Hecht, 94 Cal. App. 2d 662, 665-666 (1949) in support of this argument. The Rose court held:

> Where a creditor declines to negotiate with his debtor concerning an offer of payment and without making an objection to the form of tender or inquiring as to the latter's ability to pay the obligation, but merely refuses to consider the offer to pay, it may be assumed that any further attempt by the latter would meet with like rebuff.

Rose, 94 Cal. App. 2d at 665-666.

However, Wallace has not shown this law is applicable since the trial evidence demonstrates that through counsel, Spiegel and Wright engaged in written communication and in-person meetings regarding the proposed sale of the Improved Parcel and the release clause during February and March 2008. (SRE 13-18)

8

(letters between Spiegel's counsel and either Wright or Wright's counsel dated February 12, 2008 (SRE 13), February 20, 2008 (SRE 14), February 27, 2008 (SRE 15), February 28, 2008 (SRE 16), and March 24, 2008 (SRE 18)); (e-mail correspondence between Spiegel's counsel and Wright's counsel to set up an in-person meeting on March 10, 2008 (SRE 17.)) Therefore, Wallace has not shown that this argument justifies reversal.

### C. Refusal

Wallace argues that even if Spiegel's tender was ineffective, she had no legal obligation to tender the money to Appellees because Wright stated he would refuse to release the Improved Property even if Spiegel tendered $150,000; and under California Code of Civil Procedure § 2074 if a party refuses an offer to perform, that refusal entirely excuses performance.

> Section 2074 of the Code of Civil Procedure provides that an offer in writing to pay a sum of money if not accepted, is equivalent to actual production and tender of the money[;] th[is] section[] do[es] not affect section [] 1495 of the Civil Code which require[s] an offer to be made in good faith and that the offeror must be willing and able to perform according to the offer.

Backus v. Sessions, 17 Cal.2d 380, 389 (1941).

Section 2074 does not negate the requirement that a party have the funds necessary to make a bona fide tender. Therefore, Wallace has not shown that this argument justifies reversal.

### D. Second Trial

Wallace also argues the Bankruptcy Court "erred in holding a second trial on the issues of tender and sale" since "there was no reason for a second trial." (Mot. 29.)

9

Wright counters that a second trial was appropriate because the Ninth Circuit "specifically directed the [B]ankruptcy [C]ourt to make any necessary findings to resolve the competing claims of the parties" and the Bankruptcy Court was acting in the scope of the Ninth Circuit's remand order when it held the second trial. (Opp'n 29.)

The Bankruptcy Court stated during the first trial it focused on the issue of how the release clause was to be interpreted. (RT-2, Vol. 2, p. 118:1-8.) The Ninth Circuit reversed the Bankruptcy Court's interpretation of the release clause and remanded the matter holding that the release clause "required Wright Grandchildren L.P., upon the sale of the Improved Property, to release the Improved Property <u>if Spiegel tendered $150,000</u>." (SER 8) (emphasis added.) The Ninth Circuit states in the reversal order:

> Having considered the plain language of the contract, as well as the evidence offered to prove the intention of the parties, see <u>Jones-Hamilton Co. v. Beazer Materials & Services, Inc.</u>, 973 F.3d 688, 692 (9th Cir. 1992), we hold that the release clause in the contract between Spiegel and Wright Grandchildren L.P. is not ambiguous. It should therefore be interpreted in accordance with its plain language, giving effect to all of its provisions. Cal. Civ. Code § 1638 (Deering 2012); Cal. Civ. Proc. Code § 1858 (Deering 2012). The clause required Wright Grandchildren L.P., upon the sale of the Improved Property, to release the Improved Property if Spiegel tendered $150,000. Consistent with this decision, the case is reversed and remanded for the bankruptcy court to make any necessary findings to resolve the competing claims of the parties. REVERSED AND REMANDED.

(SRE 8).

1          The second trial conducted by the Bankruptcy Court
2 concerning the issue of whether "Spiegel tendered $150,000" falls
3 within the Ninth Circuit's remand directive that the Bankruptcy
4 Court "make any necessary findings to resolve the competing
5 claims of the parties." Therefore, Wallace has not shown the
6 Bankruptcy Court erred in holding a second trial.

### IV. CONCLUSION

    For the stated reasons, the Bankruptcy Court did not clearly err when it found Spiegel never made a valid tender to Appellees. Therefore, the Bankruptcy Court's order is AFFIRMED.

Dated:  January 21, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge